**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Complaint of Pilkington N. Am., Inc.,* Slip Opinion No. 2015-Ohio-4797.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2015-OHIO-4797

IN RE COMPLAINT OF PILKINGTON NORTH AMERICA, INC., APPELLANT;

TOLEDO EDISON COMPANY, INTERVENING APPELLEE; PUBLIC UTILITIES

COMMISSION, APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *In re Complaint of Pilkington N. Am., Inc.,* Slip Opinion No. 2015-Ohio-4797.]**

*Public Utilities Commission—Appellate procedure—Civ.R. 60(B)—Failure to raise argument in application for rehearing before commission defeats any entitlement to relief obtained by other parties on appeal from same order who did raise argument—Fact that relief stemmed from same contract does not itself confer right to share same relief—Reversal of commission order does not render order ultra vires as to parties who did not raise error in application to commission for rehearing.*

(No. 2013-0709 – Submitted September 2, 2015 – Decided November 24, 2015.)

APPEAL from the Public Utilities Commission, No. 08-255-EL-CSS.

_____

**FRENCH, J.**

{¶ 1} In the proceedings below, appellant, Pilkington North America, Inc., filed a motion for relief from judgment under Civ.R. 60(B). Pilkington sought relief from an order of appellee, the Public Utilities Commission, issued February 19, 2009, that Pilkington did not appeal. The commission denied Pilkington's motion, finding that Pilkington did not meet the requirements of Civ.R. 60(B) and that, in any event, Pilkington was not entitled to relief because it may not use Civ.R. 60(B) as a substitute for appeal.

{¶ 2} Pilkington challenges the commission's order, raising two propositions of law, each containing several supporting arguments. Pilkington has waived its primary argument that the commission's February 19, 2009 order is ultra vires. The arguments that Pilkington did preserve lack merit. Therefore, we affirm the commission's order.

*Facts and Procedural Background*

{¶ 3} Pilkington is a large industrial company that manufactures glass. It has a facility in Rossford, Ohio. In 1990, Pilkington entered into a special contract with intervening appellee, Toledo Edison Company, under which the utility provided the Rossford facility with discounted electric service. The commission approved the special contract under R.C. 4905.31, which allows a public utility to enter into a "reasonable arrangement" with "one or more of its customers."

{¶ 4} In 2008, Pilkington filed a complaint under R.C. 4905.26, alleging that Toledo Edison had unlawfully terminated the special contract. *See In re Complaint of Pilkington N. Am., Inc.*, Pub. Util. Comm. No. 08-255-EL-CSS, 7 (Feb. 19, 2009) (hereafter, the "2009 Order"). Five other large industrial companies, which also had special contracts with Toledo Edison, also filed complaints against the utility. The complaints were identical in that they alleged that Toledo Edison had prematurely terminated the special contracts in February

2008, despite contract language stating that the agreements would remain in effect until December 31, 2008. *Id.* at 2. The early termination meant that Pilkington and the other industrial customers would pay the tariff rates, which were higher than the contract rates, from February to the end of December 2008.

{¶ 5} The commission consolidated the six complaints, *id.* at 2, and the parties filed joint stipulations of fact. *Id.* at 3. Each of the industrial customers but one, Martin Marietta, agreed to pay into an escrow account the amounts in dispute, i.e., the difference between the special contract rates and the tariff rates from February 2008 to December 31, 2008. *Id.* at 7.

{¶ 6} On February 19, 2009, the commission dismissed the complaints. The commission found that the industrial customers failed to show that Toledo Edison "had violated any applicable order, statute, or regulation" when it terminated the special contracts in February 2008. 2009 Order at 20.

{¶ 7} Each of the industrial customers—except Pilkington—appealed the commission's decision to this court. Because Pilkington decided not to challenge the order on appeal, it had to release the money placed in escrow (which Pilkington claims was over $1.8 million) to Toledo Edison.

{¶ 8} In August 2011, we reversed the commission's order, holding that Toledo Edison had prematurely terminated the special contracts in February 2008. *Martin Marietta Magnesia Specialties, L.L.C. v. Pub. Util. Comm.*, 129 Ohio St.3d 485, 2011-Ohio-4189, 954 N.E.2d 104. We found under the plain language of the contracts that the contracts should have remained in effect until December 31, 2008. *Id*. at ¶ 25. This meant that the industrial customers who had appealed were entitled to discounted rates from Toledo Edison over the ten-month billing period from February to December 31, 2008.

{¶ 9} Just over four months after we decided *Martin Marietta*, Pilkington filed a Civ.R. 60(B) motion for relief from judgment with the commission. Pilkington sought relief from the commission's February 19, 2009 order

dismissing its complaint and the order denying the application for rehearing, which the other five complainants filed. Pilkington argued that this court's decision in *Martin Marietta* applied to Pilkington as it did to the other industrial customers who had successfully appealed the 2009 Order because its contract with Toledo Edison contained the same language as the other industrial customers' contracts. Therefore, according to Pilkington, it was entitled to the same remedy the other industrial customers received, namely, discounted rates through December 31, 2008.

{¶ 10} The commission denied Pilkington's motion, holding that Pilkington had failed to satisfy the requirements for obtaining relief under Civ.R. 60(B)(4). Pub. Util. Comm. No. 08-255-EL-CSS, 4 (Jan. 23, 2013). The commission also found that Pilkington was not entitled to relief under Civ.R. 60(B)(5) because that provision could not be used as a substitute for appeal. *Id.* at 5. According to the commission, Pilkington should have challenged the 2009 Order through an application for rehearing and an appeal to this court, as the other industrial customers had done. *Id*. at 4-5.

{¶ 11} Pilkington then filed an application for rehearing with the commission, claiming three errors. First, Pilkington claimed that the commission wrongly decided the Civ.R. 60(B) motion on procedural grounds rather than on the merits. Pilkington argued that the commission should exercise its authority under Ohio Adm.Code 4901-1-38(B) to waive the procedural requirements of Civ.R. 60(B) that Pilkington failed to follow.

{¶ 12} Second, Pilkington claimed that the commission violated the filed-rate doctrine by forcing it to pay an unauthorized rate. According to Pilkington, the lawful rate that applied to its electric service from Toledo Edison was the contract rate, as determined by our opinion in *Martin Marietta*.

{¶ 13} Third, Pilkington alleged that the commission allowed Toledo Edison to charge similarly situated customers different rates.

**{¶ 14}** The commission denied Pilkington's application for rehearing. Pub. Util. Comm. No. 08-255-EL-CSS, Entry on Rehearing, 5-6 (Mar. 20, 2013). Pilkington has now filed the instant appeal challenging the January 23 order and the order on rehearing.

*Standard of Review*

**{¶ 15}** "R.C. 4903.13 provides that a PUCO order shall be reversed, vacated, or modified by this court only when, upon consideration of the record, the court finds the order to be unlawful or unreasonable." *Constellation NewEnergy, Inc. v. Pub. Util. Comm.*, 104 Ohio St.3d 530, 2004-Ohio-6767, 820 N.E.2d 885, ¶ 50. We will not reverse or modify a commission decision as to questions of fact where the record contains sufficient probative evidence to show that the commission's decision was not manifestly against the weight of the evidence and was not so clearly unsupported by the record as to show misapprehension, mistake, or willful disregard of duty. *Monongahela Power Co. v. Pub. Util. Comm.*, 104 Ohio St.3d 571, 2004-Ohio-6896, 820 N.E.2d 921, ¶ 29. The appellant bears the burden of demonstrating that the commission's decision is against the manifest weight of the evidence or is clearly unsupported by the record. *Id.*

**{¶ 16}** Although this court has "complete and independent power of review as to all questions of law" in appeals from the commission, *Ohio Edison Co. v. Pub. Util. Comm.*, 78 Ohio St.3d 466, 469, 678 N.E.2d 922 (1997), we may rely on the expertise of a state agency in interpreting a law where "highly specialized issues" are involved and "where agency expertise would, therefore, be of assistance in discerning the presumed intent of our General Assembly." *Consumers' Counsel v. Pub. Util. Comm.*, 58 Ohio St.2d 108, 110, 388 N.E.2d 1370 (1979).

*Discussion*

**{¶ 17}** Pilkington raises two propositions of law, each with various supporting arguments. After review of those arguments, we conclude that Pilkington has not demonstrated reversible error.

**I.       Proposition of Law No. 1:  When an order of the commission is reversed on appeal, that order is ultra vires**

**{¶ 18}** Pilkington's primary argument on appeal is that an order of the commission that is found to be unlawful is ultra vires and "of no legal effect." According to Pilkington, when this court reversed the 2009 Order in *Martin Marietta*, it rendered that order void as a matter of law not just with respect to the appealing parties, but even as to other customers of Toledo Edison that did not appeal the order and whose interests are so interwoven with those of the appealing parties as to justify relief. Therefore, Pilkington claims it is entitled to relief from the 2009 Order despite not challenging the order on appeal.

**A.       We lack jurisdiction over Pilkington's ultra vires claim**

**{¶ 19}** Fatal to Pilkington's claim is its failure to raise the ultra vires argument in its application for rehearing of the commission's order denying Civ.R. 60(B) relief. R.C. 4903.10 requires a rehearing application to "set forth specifically the ground or grounds on which the applicant considers the order to be unreasonable or unlawful." Pilkington did not raise its ultra vires argument on rehearing as required by R.C. 4903.10, so we lack jurisdiction to consider it. *See Consumers' Counsel v. Pub. Util. Comm.*, 70 Ohio St.3d 244, 247-248, 638 N.E.2d 550 (1994); *Ohio Partners for Affordable Energy v. Pub. Util. Comm.*, 115 Ohio St.3d 208, 2007-Ohio-4790, 874 N.E.2d 764, ¶ 15.

**{¶ 20}** Pilkington tries to salvage its ultra vires claim in its reply brief. Pilkington first argues that it was not required to preserve its ultra vires argument on rehearing at the commission. Pilkington also argues that its rehearing

application contained language sufficient to preserve the ultra vires claim. We disagree on both counts.

{¶ 21} Pilkington first argues that because the commission's 2009 Order is void, it was not required to raise the ultra vires argument on rehearing. Pilkington asserts that attacks on subject-matter jurisdiction cannot be forfeited and can be raised at any time, even for the first time on appeal.

{¶ 22} As a general statement of law, this is true. When an administrative agency renders a decision without subject-matter jurisdiction, the order is void and subject to challenge at any time. *See Shawnee Twp. v. Allen Cty. Budget Comm.*, 58 Ohio St.3d 14, 15, 567 N.E.2d 1007 (1991); *Springfield Local School Dist. Bd. of Edn. v. Lucas Cty. Budget Comm.,* 71 Ohio St.3d 120, 121, 642 N.E.2d 362 (1994). In contrast, a wrong decision made by an agency with subject-matter jurisdiction is not void, but merely voidable. That is, errors in the exercise of jurisdiction can be waived and must be challenged on appeal. *See State ex rel. Broadway Petroleum Corp. v. Elyria*, 18 Ohio St.2d 23, 27, 247 N.E.2d 471 (1969); *Garverick v. Hoffman*, 23 Ohio St.2d 74, 78-79, 262 N.E.2d 695 (1970); *State ex rel. Stough v. Norton City School Dist. Bd. of Edn.,* 50 Ohio St.2d 47, 50, 362 N.E.2d 266 (1977), *overruled on other grounds, State ex rel. Alford v. Willoughby Civ. Serv. Comm.,* 58 Ohio St.2d 221, 390 N.E.2d 782 (1979).

{¶ 23} The critical problem for Pilkington is that the commission had subject-matter jurisdiction over the 2009 proceedings. The subject matter of the 2009 complaint cases concerned rates, and the commission's jurisdiction over rates and rate-related matters is unquestionable and exclusive. *See, e.g., State ex rel. Cleveland Elec. Illum. Co. v. Cuyahoga Cty. Court of Common Pleas*, 88 Ohio St.3d 447, 451, 727 N.E.2d 900 (2000).

{¶ 24} Moreover, Pilkington cannot credibly claim that the commission lacked jurisdiction over the subject matter when Pilkington itself invoked the

commission's jurisdiction by filing a complaint against Toledo Edison under R.C. 4905.26. This statute "confers exclusive jurisdiction on the PUCO to adjudicate complaints filed against public utilities challenging any rate or charge as 'unjust, unreasonable, * * * or in violation of law.' " (Brackets sic.) *DiFranco v. FirstEnergy Corp.*, 134 Ohio St.3d 144, 2012-Ohio-5445, 980 N.E.2d 996, ¶ 19. That is, Pilkington not only failed to dispute the commission's jurisdiction over its complaint, it *chose* to be subject to it.

{¶ 25} Pilkington also cites *Arlington v. Fed. Communications Comm.*, ___ U.S. ___, 133 S.Ct. 1863, ___ L.Ed.2d ___ (2013), for the proposition that it was not required to preserve its ultra vires claim on rehearing at the commission. Pilkington maintains that its ultra vires claim can be raised at any time because *Arlington* makes clear that the commission's 2009 Order—which we found unlawful in *Martin Marietta*—is void based on a lack of jurisdiction. But that assertion is incorrect.

{¶ 26} The question presented on direct review in *Arlington* was whether courts must defer to the Federal Communications Commission's interpretation of a statute that concerned the scope of the agency's jurisdiction, pursuant to *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Arlington* did state that when an administrative agency acts beyond the bounds of its statutory authority, its action is ultra vires. *Arlington* at 1869 (for administrative agencies, "[b]oth their power to act and how they are to act is authoritatively prescribed by Congress, so that when they act improperly, no less than when they act beyond their jurisdiction, what they do is ultra vires"). The case, however, was not decided on jurisdictional grounds. Pilkington overlooks the fact that the *Arlington* court expressly found that when it comes to determining the validity of an agency's statutory interpretation, there is "no principled basis" for courts to decide whether the agency exceeded the scope of its statutory authority (its jurisdiction), or

8

whether it merely erred in the exercise of its statutory authority (a nonjurisdictional question). *Id*. Rather, "[n]o matter how it is framed, the question a court faces when confronted with an agency's interpretation of a statute it administers is always, simply, whether the agency has stayed within the bounds of its statutory authority." (Emphasis deleted.) *Id.* at 1868. *See also id.* at 1869.

**{¶ 27}** Beyond this, the United States Supreme Court in *Arlington* was not addressing a situation that is even remotely similar. Here, the commission dismissed Pilkington's complaint, Pilkington chose not to appeal, and now Pilkington wants the same outcome as those parties who did appeal. By contrast, *Arlington* involved a challenge to a declaratory ruling by the Federal Communications Commission. *Id*. at 1866. Even though it contains the "ultra vires" language that Pilkington cites, we must read *Arlington* in proper context. As noted, the court rejected the contention that it needed to decide whether the agency's action was jurisdictional or nonjurisdictional. While those labels may not be important to deciding issues of statutory construction on direct review, as was true in *Arlington*, they are critical to determining whether a nonappealing party—like Pilkington—can collaterally attack a commission order outside the normal appeal process. In short, *Arlington* simply did not address a situation like this, so its opinion is wholly inapposite and we will not extend it to this case.

**{¶ 28}** Pilkington also claims that its rehearing application contains language that is sufficient to preserve the ultra vires issue for review. Pilkington argues that it was not necessary to include the specific words "ultra vires" in its rehearing application in order to preserve the issue. Rather, in its reply brief in this court, Pilkington maintains that it preserved the issue by the following statements: (1) the commission was "incorrect in denying its motion due to Pilkington's failure to seek rehearing of the original Judgment and the prohibition of using Civ.R. 60(B)(5) as a substitute for appeal" and (2) the "Commission's failure to vacate the Judgment resulted in an unlawful rate charge as a result of

this Court's decision in *Martin Marietta*." According to Pilkington, "[t]hese statements leave no doubt that the 'ground for reversal' and the 'errors complained of' are the Commission's failure to vacate the Judgment after *Martin Marietta* rendered the Judgment unlawful and void." We disagree.

{¶ 29} Pilkington overlooks the fact that this court has strictly construed the specificity requirement in R.C. 4903.10. *See Discount Cellular, Inc. v. Pub. Util. Comm.*, 112 Ohio St.3d 360, 2007-Ohio-53, 859 N.E.2d 957, ¶ 59 (when an appellant's grounds for rehearing fail to specifically allege in what respect the commission's order was unreasonable or unlawful, the requirements of R.C. 4903.10 have not been met); *Cincinnati v. Pub. Util. Comm.*, 151 Ohio St. 353, 378, 86 N.E.2d 10 (1949) (by using the language set forth in the predecessor to R.C. 4903.10, "the General Assembly indicated clearly its intention to deny the right to raise a question on appeal where the appellant's application for rehearing used a shotgun instead of a rifle to hit that question"). The general statements Pilkington cites were not sufficient to put the commission on notice of the ultra vires claim. Therefore, we cannot consider the claim on appeal. *See* R.C. 4903.10; *see also, e.g.*, *Ohio Partners for Affordable Energy*, 115 Ohio St.3d 208, 2007-Ohio-4790, 874 N.E.2d 764, at ¶ 15.

**B.     The commission did not violate the filed-rate doctrine when it refused to vacate the 2009 order**

{¶ 30} Pilkington also argues under its first proposition of law that the commission violated the filed-rate doctrine by refusing to vacate the 2009 Order. Under this doctrine, a utility may charge only the rates fixed by its current, commission-approved tariff. *See* R.C. 4905.32; *Keco Industries, Inc. v. Cincinnati & Suburban Bell Tel. Co.*, 166 Ohio St. 254, 257, 141 N.E.2d 465 (1957). More specifically, Pilkington contends that we determined what the lawful, approved rate was in *Martin Marietta*. And by refusing to order Toledo Edison to charge that rate to Pilkington, the commission has allowed the utility to

10

charge rates other than the lawful, "filed" rates, thereby violating the filed-rate doctrine.

{¶ 31} Pilkington's argument here hinges largely on its claim that the commission's 2009 order is ultra vires, a claim that is not properly before us. But more importantly, Pilkington overlooks the fact that Toledo Edison did charge Pilkington the lawful rate. The filed-rate doctrine holds that rates approved by and filed with the commission are the lawful rates, unless a litigant proves otherwise. *See* R.C. 4905.33; *In re Application of Columbus S. Power Co.*, 138 Ohio St.3d 448, 2014-Ohio-462, 8 N.E.3d 863, ¶ 51. Pilkington did not appeal the commission's 2009 Order, so it did not prove otherwise.

### C.   Pilkington has failed to show that the commission approved a discriminatory rate structure

{¶ 32} Pilkington's final argument under its first proposition of law is that by allowing the 2009 Order to stand, the commission created a discriminatory rate structure in violation of R.C. 4905.35. This argument need not detain us long, since Pilkington has provided no argument or explanation beyond this one-sentence assertion. Pilkington's failure to present an argument as to how R.C. 4905.35 applies on these facts and how it was violated is, alone, grounds for rejection. *See In re Application of Columbus S. Power Co.*, 129 Ohio St.3d 271, 2011-Ohio-2638, 951 N.E.2d 751, ¶ 14; *Util. Serv. Partners, Inc. v. Pub. Util. Comm.*, 124 Ohio St.3d 284, 2009-Ohio-6764, 921 N.E.2d 1038, ¶ 53.

## II. Proposition of Law No. 2: A motion for relief from judgment under Civ.R. 60(B) is the proper mechanism to vacate a commission order that this court has found to be unlawful

{¶ 33} In its second proposition of law, Pilkington raises three arguments. First, Pilkington contends that Civ.R. 60(B) is an appropriate procedural mechanism to vacate an unlawful commission decision. Second, Pilkington maintains that it satisfied the criteria of Civ.R. 60(B), thereby entitling it to the

relief sought. And third, Pilkington argues that public policy and the equities dictate that Pilkington is entitled to relief from the commission's unlawful decision.[1]

**{¶ 34}** It is axiomatic that Civ.R. 60(B) cannot be used as a substitute for appeal. *Bank of Am., N.A. v. Kuchta,* 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 16, citing *Harris v. Anderson,* 109 Ohio St.3d 101, 2006-Ohio-1934, 846 N.E.2d 43, ¶ 8-9. Like the other industrial companies that appealed the commission's February 19, 2009 order, Pilkington had the statutory right to file an application for rehearing and, if that application was unsuccessful, an appeal to this court. *See* R.C. 4903.10 and 4903.13. Pilkington chose not to pursue those rights, however. Civ.R. 60(B) "does not exist to allow a party to obtain relief from his or her own choice to forgo an appeal from an adverse decision." *Kuchta* at ¶ 15, citing *Ackermann v. United States*, 340 U.S. 193, 198, 71 S.Ct. 209, 95 L.Ed. 207 (1950). The doctrine of res judicata applies to a Civ.R. 60(B) motion filed as a substitute for appeal. *Kuchta* at ¶ 16. Moreover, where one party appeals a judgment, a reversal as to that party generally will not justify a reversal as to nonappealing parties. *Wigton v. Lavender,* 9 Ohio St.3d 40, 43, 457 N.E.2d 1172 (1984).

**{¶ 35}** Pilkington did not appeal the commission's adverse judgment. Therefore, that judgment is final, and res judicata precludes the use of Civ.R. 60(B) to obtain relief from that final judgment. Thus, whether or not Civ.R. 60(B) might be used in some circumstances to seek relief from an unlawful commission decision, Pilkington is not entitled to use that rule in this case, having not taken advantage of the statutory mechanisms for obtaining reversal of a commission decision.

---

[1] Pilkington has also reasserted its ultra vires claim under its second proposition of law. Because it forfeited that claim, there is no need to revisit it here.

*Conclusion*

**{¶ 36}** Pilkington had the burden of demonstrating that the commission's orders were unreasonable or unlawful. R.C. 4903.13; *Monongahela Power Co.*, 104 Ohio St.3d 571, 2004-Ohio-6896, 820 N.E.2d 921, ¶ 29. Pilkington has not carried that burden in this appeal. Therefore, we affirm the commission's orders.

Orders affirmed.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, and O'NEILL, JJ., concur.

————————————

Bricker & Eckler, L.L.P., Thomas J. O'Brien, J. Thomas Siwo, Matthew W. Warnock, and Daniel C. Gibson, for appellant.

Michael DeWine, Attorney General, William L. Wright, Thomas G. Lindgren, and Thomas W. McNamee, Assistant Attorneys General, for appellee, Public Utilities Commission of Ohio.

Calfee, Halter & Griswold, L.L.P., James F. Lang, and Sarah M. Antonuccci; David S. Winston, for intervening appellee, Toledo Edison Company.

————————————